UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| LATOYA M. COOPER, | 17-CV-1058-MJR |
| | DECISION AND ORDER |
| Plaintiff, | |
| -v- | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13).

Plaintiff Latoya Cooper brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Cooper's motion (Dkt. No. 12) is granted, the Commissioner's motion (Dkt. No. 16) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## **BACKGROUND**

On March 4, 2013, Cooper filed applications for DIB and SSI alleging disability since January 1, 2013 due to lupus, Raynaud's disease, high blood pressure, CREST syndrome, fibromyalgia, asthma, hypothyroidism, depression, anxiety, and carpal tunnel

syndrome in her left hand. (*See* Tr. 118, 132, 182-93, 209).[1]  Born in 1982, Cooper was thirty years old at the time of her applications. (Tr. 182). Cooper previously worked as a fast food worker, patient transport aide, and dietary aide (Tr. 59-60), but she contends that she can no longer work because of her impairments. Cooper's applications were denied on August 27, 2013 (Tr. 105-38) after which she requested a hearing before an Administrative Law Judge (Tr. 139-40). On November 10, 2015, Cooper appeared with counsel before Administrative Law Judge Sharon Seeley (the "ALJ") for a hearing. (Tr. 49-93). On April 7, 2016, the ALJ issued her decision denying Cooper's DIB and SSI claims. (Tr. 8-32). Cooper requested review by the Appeals Council (Tr. 179-81), but on August 24, 2017, the Appeals Council denied Cooper's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-7). This action followed.

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[1]  References to "Tr." are to the administrative record in this case.

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>*Standards for Determining "Disability" Under the Act*</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the

Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot

adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Cooper has not engaged in substantial gainful activity since January 1, 2013, her alleged onset date. (Tr. 13). At step two, the ALJ concluded that Cooper has the following severe impairments: systemic lupus erythematosus, obesity, major depressive disorder, anxiety disorder, CREST syndrome, and headaches. (*Id.*). At step three, the ALJ found that Cooper does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 14). Before proceeding to step four, the ALJ assessed Cooper's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a less than full range of light work as defined in [20 C.F.R. §§404.1567(b) and 416.967(b)].[2] Specifically, she is able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk six hours in an eight-hour workday, alternating after 30 minutes to sitting five minutes; frequently handle, finger and feel; and work in an environment that does not involve exposure to weather, to extreme heat or cold, or to fumes, smoke, dust or other pulmonary irritants. Further, she is able to understand, remember and carry out simple instructions and tasks; maintain attention and concentration sufficient for such instructions and tasks with customary breaks; and perform work that does not involve supervisory responsibilities, does not require independent decision-making other than with respect to simple, routine work related decisions, and does not involve more than occasional changes in work setting.

(Tr. 16). Proceeding to step four, the ALJ found that Cooper is unable to perform any of her past relevant work. (Tr. 26). At the fifth step, the ALJ considered Cooper's age, education, work experience, RFC, and the testimony of a vocational expert to conclude that Cooper can perform jobs that exist in significant numbers in the national economy, such as office helper, assembly machine operator, and conveyor-line bakery worker. (Tr. 26-28). Accordingly, the ALJ found that Cooper has not been under a disability within the meaning of the Act from her alleged onset date of January 1, 2013 through the date of the ALJ's decision. (Tr. 28).

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§404.1567(b), 416.967(b).

IV.  *Cooper's Challenge*

Cooper argues that the ALJ erred in concluding at step two that her fibromyalgia is not a medically determinable impairment. (*See* Dkt. No. 12-1 (Cooper's Memo. of Law) at 20-24).

A claimant may be found disabled under the Act only if she has a medically determinable impairment. *See* 20 C.F.R. §§404.1505(a), 416.905. Such an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§404.1521, 416.921. If an impairment is not medically determinable, then it cannot be "severe" at step two of the five step sequential evaluation process. *See Keller v. Colvin*, No. 16-CV-6399P, 2017 WL 4112024, at *12 (W.D.N.Y. Sept. 18, 2017).

Social Security Ruling ("SSR") 12-2p sets forth criteria to determine whether a claimant has a medically determinable impairment of fibromyalgia — specifically, a physician must diagnose fibromyalgia, the diagnosis cannot be inconsistent with the other evidence in the case record, and the physician must provide evidence of: (1) a history of widespread pain, at least eleven positive tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded; or (2) a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and evidence that other disorders that could cause these repeated manifestations were excluded. 2012 WL 3104869, at *2-3 (July 25, 2012).

Here, the ALJ acknowledged that Cooper's physicians, including her treating rheumatologist, Dr. Linda Burns, diagnosed her with fibromyalgia. (Tr. 14, 18-19). The

ALJ nonetheless concluded that Cooper's fibromyalgia is not a medically determinable impairment under SSR 12-2p because the record, while reflecting tender points at times, otherwise lacks "sufficient detail." (Tr. 14). SSR 12-2p directs an ALJ to take additional steps, such as recontacting the claimant's treating physicians, when the record lacks adequate information to determine whether the claimant has a medically determinable impairment of fibromyalgia. 2012 WL 3104869, at *4. Thus, rather than reject Cooper's fibromyalgia as a medically determinable impairment due to insufficient evidence in the record, the ALJ should have recontacted Dr. Burns or one of Cooper's other physicians to determine whether Cooper's fibromyalgia satisfies the criteria set forth in SSR 12-2p.

The ALJ's focus on "tender points" in rejecting Cooper's fibromyalgia as a medically determinable impairment also appears to overlook part of the diagnostic criteria set forth in SSR 12-2p. Under SSR 12-2p, fibromyalgia may be assessed not only through evidence of positive tender points, but also through evidence reflecting repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, and irritable bowel syndrome. 2012 WL 3104869, at *2-3. It is not clear from the ALJ's decision whether she considered this alternative diagnostic criteria. It is also unclear from the ALJ's decision whether she considered the favorable disability decision Cooper received from a different ALJ in August 2012 in which her fibromyalgia was found to be a severe impairment. (Tr. 94-104).[3] The ALJ's conclusion in this case that Cooper's fibromyalgia is not even a medically determinable impairment is hard to reconcile with the prior ALJ's severity conclusion.

---

[3] The prior decision covered the period September 2, 2010 through September 28, 2011. (Tr. 94-104).

The Commissioner argues, however, that even if the ALJ erred in excluding Cooper's fibromyalgia as a medically determinable impairment, the error was harmless because the ALJ proceeded beyond step two and specifically considered Cooper's fibromyalgia-related symptoms in the remainder of her decision. (*See* Dkt. No. 16 (Commissioner's Memo. of Law) at 16-17). Although the Commissioner is correct that an error at step two may be harmless if the ALJ identifies other severe impairments at the second step and proceeds to considers any non-severe impairments at the remaining steps, *see Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order), the ALJ's error in this case stemmed not from a severity conclusion, but from the conclusion that Cooper's fibromyalgia is not even a medically determinable impairment. This distinction is significant because an ALJ may credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable. *See* SSR 12-2p*,* 2012 WL 3104869, at *5. Put another way, because the ALJ concluded that Cooper's fibromyalgia is not a medically determinable impairment, she had no basis to credit Cooper's statements regarding her fibromyalgia-related symptoms in the remainder of her decision. *See Keller*, 2017 WL 4112024, at *14 ("[T]he step two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable.").

Accordingly, for these reasons, the ALJ's decision to exclude Cooper's fibromyalgia as a medically determinable impairment is not supported by substantial evidence, and the case is thus remanded for the ALJ to properly evaluate Cooper's fibromyalgia under SSR 12-2p. The ALJ should also consider on remand Cooper's

alternative argument that the ALJ failed to properly evaluate the mental health medical opinions in the record. (*See* Dkt. No. 12-1 (Cooper's Memo. of Law) at 24-28).

## **CONCLUSION**

For the foregoing reasons, Cooper's motion for judgment on the pleadings (Dkt. No. 12) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: March 11, 2019
Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge